## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CORRIDOR CAPITAL LLC; and | ) | |
| STEEL FLEET, LLC, | ) | |
| Plaintiffs, | ) | No. 15 C 5757 |
| | ) | |
| v. | ) | |
| | ) | |
| PERLA GLOBAL CAPITAL ADVISORS, | ) | |
| LLC; et al, | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Corridor Capital, LLC and Steel Fleet, LLC filed this action against Perla Global Capital Advisors, LLC and Fernando Serrano, individually and doing business as Perla Global Capital Advisors, LLC and Perla Global Capital Advisors, alleging violations of the Illinois Consumer Fraud Act, fraud, conversion and unjust enrichment. Defendants move to dismiss the complaint for lack of personal jurisdiction and improper venue under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure respectively. Alternatively, Defendants seek to transfer the case to the Central District of California pursuant to 28 U.S.C. §1406(a). Defendants' motion to dismiss for lack of jurisdiction or, in the alternative, to transfer venue [12] is granted. This case is to be transferred to the Central District of California. Because the matter is to be transferred, the Court need not consider the personal jurisdiction issues raised by Defendants under Rule 12(b)(2). Plaintiffs' motion to strike the declaration offered in support of Defendants' motion to dismiss [16] is granted in part.[1]

---

[1] Plaintiffs move to strike the affidavit of attorney John C. Staser offered in support of Defendants' motion to dismiss. (Dkt. No. 16). Staser is not a party to this litigation or counsel of record for Defendants in this case, though he refers to himself as "counsel of record for Defendants." In paragraphs 4-11 of his affidavit, Staser provides a narrative of the relationship and communications between Plaintiffs and Defendants in this case. Paragraphs 12-19 are legal conclusions and argument supported by emails and letters between individuals other than Staser. All of the relevant content contained in this affidavit is inadmissible because it is either not based on the affiant's personal knowledge or is impermissible legal conclusion and argument. Staser was not a party to any of the communications submitted in support of his affidavit and, while he claims to have personal knowledge of the contents of his affidavit,

## I. BACKGROUND[2]

Plaintiffs Corridor Capital and Steel Fleet are Illinois limited liability companies that do business in Cook County, Illinois. (Compl. ¶ 1). Defendant Perla Global Capital Advisors LLC is a Delaware limited liability company that does business in California and claims that its United States headquarters is in California. (*Id*. ¶ 2). Defendant Perla Global Capital Advisors is a sole proprietorship and the name used by Defendant Fernando Serrano in his business activities. (*Id*. ¶ 3).

This lawsuit arises from a fractured business relationship between Plaintiffs and Defendants. Before Perla became involved with Corridor, Perla was working with a Michigan-based company called Railmark Holdings to facilitate financing for Railmark's acquisition of two passenger-train operations in Ontario, Canada from the Canadian National Railway on the Algoma Central Railroad. (*See id*. ¶¶ 6-7). At some point, Railmark began reaching out to Corridor to "discuss potential synergies and joint ventures between Corridor and Railmark." (*Id*. ¶ 6).

On March 17-18, 2015, James Coston of Corridor visited B. Allen Brown, the President and CEO of Railmark Holdings, in Lansing, Michigan to discuss this venture. (*Id*. ¶ 7). During that trip, Brown told Coston about the financial relationship it had entered into with Perla and they spoke via teleconference with Serrano. (*Id*. ¶¶ 7-8). During that call, Serrano explained his personal business background and provided great detail about his company Perla, including "its business goals and policies and how Perla had arranged for several billion dollars in financing

---

he provides no support for such claim and the Court finds such an inference tenuous. That said, the Court considers the documents offered in support of the affidavit. The Court further notes that even if it were to consider the complete affidavit of Staser, its contents would have no effect on this ruling especially since most of the affidavit is merely a summary of the accompanying documents.

[2] The Court takes these allegations from the Complaint as true for purposes of evaluating Defendants' motion to dismiss under 12(b)(3) of the Federal Rules of Civil Procedure. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007)).

for companies like Railmark and Corridor." (*Id*. ¶ 8). Serrano also "advised that Perla had already secured $50 million for Railmark, and that he would consider raising that amount to accommodate the financing of Corridor's rail projects." (*Id*. ¶ 8). To obtain the alleged funding, Serrano said that he required "due diligence" fees to operate. (Dkt. No. 20, Ex. A at ¶ 5). During that same trip, Brown informed Coston that Railmark had entered into a financing agreement ("Engagement Letter") with Perla. (*Id*. ¶ 3). The terms of that Engagement Letter[3] provided for, among other things, the payment of "due diligence" fees, as well as a  dispute resolution clause. (Dkt. No. 13, Ex. A). The dispute resolution clause stated: "Any dispute between the parties concerning the interpretation, validity, or performance of this letter agreement or any of its terms and provisions shall be submitted to the State or Federal Courts of Newport beach, California." (*Id*.)

After a follow-up conversation between Brown and Coston, Coston agreed that Corridor "would reach out to its Steel Fleet investors and seek the initial $8,000 payable by Railmark to Perla in order for Corridor to participate in the funding." (Compl. ¶ 9). The $8,000 was wired from an account maintained by Steel Fleet at BMO Harris Bank in Chicago to an account maintained by Perla at Citibank in Los Angeles, California. (*Id*. ¶ 9).

On March 24, 2015, Coston travelled to Michigan to meet with Brown and Serrano. (*Id*. ¶ 10). Serrano provided "more information on his background and the background of Perla." (*Id*. ¶ 10). The next day, Coston, Brown, and Serrano drove from Wixom, Michigan to Sault Ste. Marie, Ontario to tour facilities, meet with railroad and civic officials, and discuss various aspects of the acquisition. (*Id*. ¶ 12).

---

[3] In considering a motion to dismiss for improper venue, courts may examine facts outside the complaint. *See Faulkenberg*, 637 F.3d at 809–10 (noting it appropriate to consider the underlying agreement containing the forum selection clause in question).

A few days later, Coston returned to Chicago and participated in a conference call with Brown and Serrano. (*Id.* ¶ 13). During that call, Serrano provided an extensive outline "incorporating the inclusion of Corridor as a strategic and joint venture partner, adding Mr. Coston to senior management and the Board, and discussing multiple aspects of a global rail company holding company financed by Perla." (*Id.* ¶ 13). This outline confirmed that the final balance of "due diligence fees" were payable on Monday, March 30, 2015. (*Id.* ¶ 13). That Monday, Brown informed Coston that Railmark did not have available funds for the remaining balance. (*Id.* ¶ 14). To move forward with the financing, Coston arranged for Steel Fleet investors to provide the remaining due diligence fee. (*Id.* ¶ 17). That $18,000 payment was wired from the Steel Fleet account at BMO Harris Bank in Chicago to the Perla account at Citibank in Los Angeles, California on April 1, 2015. (*Id.* ¶ 17). Seven days later, a new draft agreement incorporating the new terms discussed on the recent conference call was delivered to Corridor and Railmark. (*Id.* ¶ 18).

On April 5, 2015, Brown, Coston, and Serrano participated in a conference call and exchanged a series of emails to prepare for a conference call with the Canadian National Railway the following day. (*Id.* ¶ 19). On the call the next day, Serrano explained in "painstaking detail exactly how Railmark's contractual obligations would be funded by Perla on a timely basis." (*Id.*) Then, on April 7, 2015, Serrano travelled to Chicago to "visit Corridor's offices, engage in further discussions over the planned new entity and its growth, meet with Corridor's existing strategic partners and others providing services to Corridor." (*Id.* ¶ 20). At meetings in Chicago on April 7 and 8, 2015, Serrano "stated to all of Corridor's strategic partners and others providing services to Corridor that the funding commitment was in hand, and he engaged in extensive, detailed dialogue with each person, making specific representations about how the

monies being raised by Perla would be used immediately to develop existing projects, make strategic acquisitions and benefit all concerned to create a vertically integrated global rail and rail service business entity, one that was expected to eventually generate $500 million in revenues." (*Id*. ¶ 22).

On April 10 and 13, 2015, there were additional conference calls between Serrano, Coston, and Brown regarding funding. (*Id*. ¶ 23). Subsequent to the April 13, 2015 call, Serrano began sending emails to Coston and Brown demanding money and demanding that the revised agreement be executed by Corridor and Railmark. (*Id*. ¶ 24). The relationship between Serrano and the Plaintiffs deteriorated. On April 19, 2015, Corridor and Steel Fleet assembled a team to verify the claims made by Serrano regarding himself and Perla. This lawsuit followed.

## II. DISCUSSION

Defendants move to dismiss or transfer this action pursuant to Rule 12(b)(3) or 28 U.S.C. § 1406(a) because they claim that venue is improper in the Northern District of Illinois. Preliminarily, the Court finds that venue is clearly proper in this district and that the matter is therefore not subject to transfer pursuant to § 1406(a). Venue in an action removed from state court to federal court is governed by the removal statute, 28 U.S.C. § 1441, not by the general venue statute, 28 U.S.C. § 1391. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("But even on the question of venue, § 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by 28 U.S.C. § 1441(a)"). Under 28 U.S.C. § 1441, venue of a removed action is proper in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In this case, the Northern District of Illinois is the district embracing Cook County, the place where this action was originally brought. Venue is therefore proper under § 1441(a) and the

Court will not transfer or dismiss the case under § 1406. *See* 28 U.S.C. § 1406(a); *see also In re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008).

The Court next turns to consider Defendants' motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Rule 12(b)(3) provides for the dismissal of an action for improper venue based on the existence of a forum selection clause. *See Automobile Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606–07 (7th Cir. 2003). A forum selection clause that is part of an enforceable contract is presumed valid. *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 210 (7th Cir. 1993); *see also AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 843 (N.D. Ill. 2006). Where the forum selection clause specifies a specific venue with "mandatory or obligatory language, the clause will be enforced." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Plaintiffs seeking to overcome a forum selection clause on the grounds of inconvenience have the burden to make the showing that a forum selection clause should be invalidated. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972).

In this case, Defendants insist that the Court should transfer the case to the Central District of California (which is also a proper venue because that is where Defendants are located) based on the forum selection clause repeatedly invoked by Defendants throughout their opening and reply briefs. The Court notes that the bulk of Defendants' forum selection clause argument is set forth in their personal jurisdiction argument rather than their venue argument. The argument, however, is incorporated by reference in the venue section and the theme throughout Defendants' papers is obviously that the Central District of California is the appropriate venue for this matter

6

pursuant to the terms of the subject Engagement Agreement, which includes a forum selection clause.

Plaintiffs, however, failed to address the subject forum selection clause in their response despite acknowledging that Defendants relied quite heavily on it: "Defendants' Motion to Dismiss focuses on an agreement to which the Plaintiffs were not even a party, and which is not the subject of the instant lawsuit." (Dkt. No. 20, 12). Plaintiffs assert that: "at no time was either Corridor or Steel Fleet a party to the letter agreement dated March 16, 2015 entered into between Perla and Railmark." (*See id.* at 3-4). That a party is not named on an agreement, however, does not necessarily mean they are not bound by the forum selection clause in that agreement. "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel*, 999 F.2d at 210 (7th Cir. 1993) (internal citation omitted). Based on the facts set forth in the Complaint, the Court cannot conclude that Plaintiffs were not sufficiently related to the March Agreement between Perla and Railmark that they could not have foreseen being bound by its terms. Similarly, the Court cannot conclude that the pending causes of action are beyond the scope of the subject provision. *See, e.g., id.* at 209 (rejecting the argument that a tortious interference with business relationship claim is not covered by a contractual forum-selection clause).

There may be several reasons why the forum selection clause in this case should not be considered valid, enforceable, or applicable—including, for example, the scope of the provision, the relationship between the Plaintiffs and the clause, or fraudulent inducement—but there is no escaping the fact that none of these arguments were raised by Plaintiffs. Other than stating twice in the opening of their response brief that they never entered into the agreement between Perla and Railmark, Plaintiffs do not address the subject forum selection clause. This Court cannot

consider undeveloped arguments, let alone arguments that were not raised: such arguments are waived. *See Kochert*, 491 F.3d at 679 (deeming potential argument that forum-selection clause should be construed as merely permissive or nonexclusive waived where it was not raised by the plaintiff); *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004) (rejecting argument that "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit").

Having determined that the forum selection clause applies here, the Court must determine whether to dismiss the case or transfer it. Because this Court meets the venue requirements of § 1441, Section 1404(a) governs the Court's analysis of whether to transfer the case instead of merely dismissing it. *See In re LimitNone, LLC*, 551 F.3d at 575–76; *see also, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 32 (1988) (applying § 1404(a) to transfer based on forum-selection clause). Plaintiffs are correct that Defendants never raised Section 1404 in their motion, however, nothing precludes a district court faced with a Rule 12 motion based on a forum selection clause from considering Section 1404 factors to determine whether transfer is preferable to dismissal under Rule 12. *See, e.g., Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 942 (N.D. Ill. 2011) (quoting *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001)).

In this case, the Court finds that transfer is in fact preferable to outright dismissal. *See Giles v. Cont'l Cas. Co.*, 2010 WL 481233, at *5 (S.D. Ill. Feb. 5, 2010) ("Generally, courts prefer transferring a case to a jurisdiction where venue is proper as opposed to dismissing it.... Transfer ... avoids the time-consuming and justice-defeating technicalities required to refile a case in [another] venue."). There is a "strong presumption" in favor of enforcing a mandatory and valid forum selection clause, which "can be overcome ... only if there is inconvenience to

8

some third party ... or to the judicial system itself, as distinct from inconvenience to the party seeking [to avoid the clause]. That party's inconvenience has no weight if the clause is valid, because the party waived any objection based on inconvenience to it by agreeing to the clause. But it could not waive rights of third parties, or the interest of the federal judiciary in the orderly allocation of judicial business, which is why a transfer motion [to the designated forum] can be [denied] even if there is a valid forum selection clause." *IFC Credit Corp. v. Aliano Bros. Gen'l Contractors, Inc.*, 437 F.3d 606, 613 (7th Cir. 2006). The inconvenience to Plaintiffs Corridor and Steel Fleet of litigating in the Central District of California is irrelevant under § 1404(a). The only basis for declining to enforce the clause is that transfer "would impose significant costs on third parties or on the judicial system." *Abbott Labs. V. Takeda Pharm. Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007). On the record now before it, the Court sees no significant cost to third parties or potential interference with the orderly provision of judicial business in transferring the matter. The Court, therefore, transfers this case to the Central District of California.

## CONCLUSION

For the reasons stated, this case is transferred to the Central District of California pursuant to § 1404(a). Because the case is to be transferred, the Court dismisses as moot Defendant's challenge to this Court's personal jurisdiction.


Date:   2/12/2016                                             /s/Virginia M. Kendall